FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Aug 25, 2026

SEAN F. MCAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| MELVIN B.,<br>Plaintiff,<br>v.<br>COMMISSIONER OF SOCIAL SECURITY,<br>Defendant. | NO. 4:25-CV-5179-TOR<br>ORDER AFFIRMING DENIAL OF BENEFITS |

BEFORE THE COURT are Plaintiff's Motion for Summary Judgment (ECF No. 11) and Defendant's Motion for Summary Judgment (ECF No. 13). Chad Hatfield represents Plaintiff and Defendant is represented by Special Assistant David J. Burdett. The Court has reviewed the administrative record and the parties completed briefing and is fully informed. For the reasons discussed below, Defendant's Motion for Summary Judgment (ECF No. 13) is **GRANTED** and Plaintiff's Motion for Summary Judgment (ECF No. 11) is **DENIED**.

## JURISDICTION

The Court has jurisdiction over this case pursuant to 42 U.S.C. § 405(g).

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited: the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012) (citing 42 U.S.C. § 405(g)). "Substantial evidence" means relevant evidence that "a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* In determining whether this standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (citation omitted). Further, a district court "may not reverse an ALJ's decision on account of an error

that is harmless." *Id*. An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id.* at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

**FIVE-STEP SEQUENTIAL EVALUATION PROCESS**

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. § 404.1520(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. § 404.1520(a)(4)(i). If the claimant is engaged in

"substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 404.1520(b).

If the claimant is not engaged in substantial gainful activities, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. § 404.1520(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. § 404.1520(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. *Id.*

At step three, the Commissioner compares the claimant's impairment to several impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(iii). If the impairment is as severe, or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. § 404.1520(d).

If the severity of the claimant's impairment does meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity." Residual functional capacity ("RFC"), defined generally as the claimant's ability to perform physical and mental work

activities on a sustained basis despite his or her limitations (20 C.F.R. § 404.1545(a)(1)), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past ("past relevant work"). 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 404.1520(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. § 404.1520(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and work experience. *Id.* If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 404.1520(g)(1). If the claimant is not capable of adjusting to other work, the analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. *Id.*

The claimant bears the burden of proof at steps one through four above. *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish

that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. § 416.1560(c); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

**ALJ'S FINDINGS**

Plaintiff filed a Title II application for a period of disability and disability insurance benefits on October 3, 2022, alleging disability beginning May 16, 2022. Tr. 17. The claim was denied initially on November 1, 2022, and upon reconsideration on May 1, 2023. *Id.* Plaintiff appeared for a telephonic hearing before an Administrative Law Judge ("ALJ") on January 15, 2025. *Id.* On January 22, 2025, the ALJ denied Plaintiff's claim. Tr. 28.

As a threshold matter, the ALJ found Plaintiff met the insured status requirements of the Social Security Act through June 30, 2027. Tr. 19. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since May 16, 2022, the alleged onset date. Tr. 20. At step two, the ALJ found that Plaintiff had the following severe impairments: mood disorder; anxiety disorder; and cannabis use disorder. *Id.* At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. *Id.* The ALJ then determined Plaintiff has the residual functional capacity to perform a full range of work at all exertional levels except as follows:

> [Plaintiff] can sustain focus and concentration on work-related tasks for two hours at a time; and he can have only occasional, superficial interaction with the public, supervisors, and coworkers.

Tr. 21-22.

At step four, the ALJ found Plaintiff could not perform past relevant work. Tr. 26. At step five, the ALJ found that, considering Plaintiff's age, education, work experience, RFC, and testimony from a vocational expert, there were other jobs that existed in significant numbers in the national economy that Plaintiff could perform, such as church janitor, auto detailer, and industrial cleaner. Tr. 27. The ALJ concluded Plaintiff was not under a disability as defined in the Social Security Act, from May 16, 2022, the alleged onset date, through January 22, 2025, the date of the ALJ's decision. Tr. 28.

On October 15, 2025, the Appeals Council denied review making the ALJ's decision the Commissioner's final decision for purposes of judicial review. 20 C.F.R. § 404.984(d).

**ISSUES**

Plaintiff seeks judicial review of the Commissioner's final decision denying him disability insurance benefits under Title II of the Social Security Act. Plaintiff raises the following issues for the Court's review:

1. Whether the ALJ erred a step three;
2. Whether the ALJ properly assessed Plaintiff's symptom testimony;

3. Whether the ALJ properly assessed the lay witness testimony; and

4. Whether the ALJ erred at step five.

ECF No. 11 at 5.

## DISCUSSION

### A. Step Three

Plaintiff argues that the ALJ failed to conduct an adequate evaluation at step three by not finding Plaintiff met or equaled Listings 12.04 and 12.06 with the presence of "paragraph C" criteria. ECF No. 11 at 7-11.

Paragraph C criteria under Listings 12.04 and 12.06 are used "to evaluate mental disorders that are 'serious and persistent.'" 20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 12.00(A)(2)(c). A mental disorder is "serious and persistent" "when there is a medically documented history of the existence of the mental disorder in the listing category over a period of at least 2 years" and both C1 and C2 criterion are met. *Id.* C1 requires evidence that the claimant relies, "on an ongoing basis, upon medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s), to diminish the signs and symptoms" of the mental disorder. 20 C.F.R. § Pt. 404, Subpt. P, App. 1, §§ 12.00G(2)(b), 12.04(C)(1), 12.06(C)(1). And C2 requires a showing of marginal adjustments in daily life despite diminished symptoms or signs. 20 C.F.R. § Pt. 404, Subpt. P, App. 1, §§ 12.00G(2)(c), 12.04(C)(2), 12.06(C)(2). In other words, a claimant has a limited

capacity to adapt to changes in the environment or demands not already part of the claimant's daily life. *Id.*

Here, the ALJ found the "paragraph C" criteria were not met because "[t]he record does not establish that the claimant has only marginal adjustment, that is, a minimal capacity to adapt to changes in the claimant's environment or to demands that are not already part of the claimant's daily life." Tr. 21. As an example, the ALJ noted that Plaintiff's "insight and judgment were found to be fair or good, which suggests the claimant does not possess only a marginal adjustment to changes in the environment." *Id.* (citing Tr. 367, 370, 374, 378, 385, 390).

Plaintiff argues that the ALJ's reasoning failed to account for all the probative evidence in the record demonstrating marginal adjustment. ECF No. 11 at 8-9. The Court agrees that the cited records of fair or good insight and judgment do not alone support the ALJ's reasoning that Plaintiff does not possess marginal adjustment. Several of the cited records report either fair or good insight and judgment but also report Plaintiff as struggling. On June 14, 2022, Plaintiff reported feeling depressed after an incident with his manager and noted he did not "feel capable of returning to the same site as the manager who spoke to him." Tr. 367. On June 2, 2022, Plaintiff was in a state of "despair" experiencing anger, sadness, and low energy and reported his break down was related to issues selling his house and going through a divorce. Tr. 369. And on May 24, 2022, Plaintiff

presented with anxious affect and reported he was "not doing good." Tr. 374. He reported stressors from selling his home and getting a divorce and noted he was not able to work much due to the stress. *Id.* These reports indicate Plaintiff struggled to adapt to changes in his environment. However, the ALJ cited those records only as an example. Tr. 21. The ALJ's evaluation of the evidence elsewhere in the decision does not support marginal adjustment. *See, e.g.*, *Christopher J. v. Comm'r of Soc. Sec.*, No. 24CV349-GPC(MSB), 2025 WL 967123, at *8 (S.D. Cal. Mar. 27, 2025) ("Because the ALJ's evaluation of the evidence reveals that Plaintiff had not demonstrated marginal adjustment, substantial evidence supports the ALJ's conclusion that the paragraph C criteria was not satisfied.").

For example, the ALJ noted that Plaintiff often reported doing alright or even good prior to his incarceration and that he experienced some improvement while on medication. Tr. 23 (citing Tr. 518, 333, 351, 355, 530, 547, 621, 415). The ALJ also referenced Plaintiff's sporadic treatments despite having insurance to pursue whatever treatment he needed and the absence of any psychiatric treatment interventions during the relevant period, such as inpatient hospitalizations or intensive outpatient treatment. Tr. 23-24. Additionally, two State Disability Determination Services ("DDS") psychological consultants opined that Plaintiff had only a mild limitation in his ability to adapt or manage himself. Tr. 73, 66. The ALJ found these opinions persuasive but noted that the record supported a

moderate limitation rather than mild. Tr. 25. Plaintiff does not challenge the ALJ's assessment of these medical opinions. And finally, while Plaintiff testified that the crime that led to his incarceration was an attempted suicide by police officer, the ALJ reasoned that "[i]f law enforcement felt he was suicidal at that time, he would have been taken to the hospital for psychiatric clearance, yet there is no evidence of any such hospitalizations." Tr. 23-24.

Thus, the Court finds the ALJ's conclusion that Plaintiff did not meet the paragraph C criteria was substantially supported.

**B. Plaintiff's Symptom Testimony**

Plaintiff argues the ALJ erred in discounting Plaintiff's subjective symptom testimony. ECF No. 11 at 12.

The Commissioner undertakes a two-step analysis to determine whether a claimant's subjective symptom testimony can be reasonably accepted as consistent with the objective record evidence. Social Security Ruling ("SSR") 16-3p, 2016 WL 1119029, at *2. "First, the ALJ must determine whether there is 'objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged.'" *Molina*, 674 F.3d at 1112 (quoting *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009)). "The claimant is not required to show that [the claimant's] impairment 'could reasonably be expected to cause the severity of the symptom [the claimant] has alleged; [the

claimant] need only show that it could reasonably have caused some degree of the symptom.'" *Vasquez*, 572 F.3d at 591 (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007)).

Even if a plaintiff meets the first prong of the two-step test, the ALJ will only proceed to the second part of the analysis absent evidence of malingering. When affirmative evidence of malingering exists, the ALJ is not required to provide clear and convincing reasons to reject the claimant's testimony. *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1160 (9th Cir. 2008). Instead, the ALJ may reject the claimant's symptom testimony merely upon identifying some evidence of malingering in the record. *Benton ex rel. Benton v. Barnhart*, 331 F.3d 1030, 1040 (9th Cir. 2003); *see also Vasquez*, 572 F.3d at 591 (departing from the standard set forth in *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880 (9th Cir. 2006), which required an explicit finding of malingering).

Assuming that the claimant meets the first prong and lacking record evidence of malingering, the ALJ will proceed to the second step of the test. "[T]he ALJ can only reject the claimant's testimony about the severity of the symptoms if she gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citations omitted). General findings are insufficient; rather, the ALJ must identify what symptom claims are being discounted and what evidence undermines these claims. *Id.*

(quoting *Lester*, 81 F.3d at 834); *Thomas*, 278 F.3d at 958 (requiring the ALJ to sufficiently explain why he or she discounted claimant's symptom claims). "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison*, 759 F.3d at 1015 (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

Factors to be considered in evaluating the intensity, persistence, and limiting effects of a claimant's symptoms include: (1) daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, an individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment an individual uses or has used to relieve pain or other symptoms; and (7) any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms. SSR 16-3p, 2016 WL 1119029, at *7-*8; 20 C.F.R. § 416.929(c). The ALJ is instructed to "consider all of the evidence in an individual's record," "to determine how symptoms limit ability to perform work-related activities." SSR 16-3p, 2016 WL 1119029, at *2.

Here, the ALJ summarized Plaintiff's testimony of not being able to work "because of issues related to depression, anxiety, his concentration, emotional

breakdowns, confusion, and a lack of focus." Tr. 22. The ALJ found Plaintiff's medically determinable impairments could reasonably be expected to produce his alleged symptoms but his statements concerning the intensity, persistence and limiting effects of his symptoms were inconsistent with the evidence. Tr. 22.

First, the ALJ found that the objective evidence was unremarkable. Tr. 22. The ALJ noted that Plaintiff's mental status exams throughout the relevant period were "overwhelmingly normal or indicate only modest impairment." Tr. 23. The ALJ cited records reporting Plaintiff as pleasant and cooperative (citing Tr. 609-610, 615, 626) with normal speech and good eye contact (citing Tr. 378, 385, 390, 626); good or normal attention and concentration (citing Tr. 390, 392, 520, 532, 549, 604); fair, good, or intact memory (citing Tr. 335, 358, 363, 373, 385); and fair or good insight and judgment (citing Tr. 367, 370, 374, 378, 385, 390).

Plaintiff argues that the ALJ's reasoning improperly relies on the waxing and waning of symptoms and alleged inconsistent reports. ECF No. 11 at 13. Plaintiff contends that the record demonstrates frequent suicidal ideation with occasional planning intent, deficits in mood, affect, and speech, and variable insight and judgment. *Id.* at 13-14. Where a plaintiff's complaints of mental health impairments wax and wane over the alleged period of disability, the mental health records "must be viewed in light of the overall diagnostic record." *Ghanim v. Colvin*, 759 F.3d 995 (9th Cir. 2014). An ALJ may not cherry pick from the

record examples of an absence of symptoms to discount a claimant's mental health allegations. *Diedrich v. Berrhill*, 874 F.3d 634, 642 (9th Cir. 2017).

Here, the ALJ did not cherry pick isolated incidents of normal mental status examinations but cited to records throughout the relevant period. That Plaintiff on occasion had fluctuating insight, deficits in mood, affect, and speech does not undermine the ALJ's finding that the majority of Plaintiff's mental status examinations were normal. Moreover, many of the records Plaintiff relies on still report Plaintiff with good memory, attention span and concentration (Tr. 373, 363, 358, 549, 634-635, 632), good or fair insight (Tr. 373, 370, 367, 348, 516, 545, 559), and normal speech (Tr. 370, 367, 541, 559, 634, 631). These records and the ALJ's referenced records undermine Plaintiff's testimony particularly as to the severity of his issues related to concentration, lack of focus, and confusion.

The ALJ next found Plaintiff's past recorded statements were inconsistent with his alleged severity of his symptoms. Tr. 23. The ALJ noted that on several occasions Plaintiff reported he was "alright" (citing Tr. 518, 333, 351, 355), "pretty good" (citing Tr. 530), "doing okay" (citing Tr. 547), and having improvement with medications (citing Tr. 621, 415). Tr. 23. Plaintiff points to his testimony that he downplayed his suicidal ideation to his treating psychiatrist for fear of being sent to a psychiatric ward on an involuntary hold. ECF No. 11 at 13; Tr. 47-48. However, the ALJ accounted for this testimony and found it "self-serving and

uncorroborated" and not supported by anything in the record. Tr. 23.

The ALJ next reasoned that Plaintiff's course of treatment had been routine and conservative. *Id.* The ALJ found Plaintiff had minimal engagement with the available counseling in prison (citing Tr. 608); his counseling prior to prison was infrequent and sporadic (citing Tr. 514-557); he had no major psychiatric treatment interventions during the applicable period; and he had a history of not taking his psychiatric medications as prescribed (citing Tr. 417). The ALJ further noted that per Plaintiff's testimony, he had health insurance prior to his incarceration and could get any treatment he needed. Tr. 24. Evidence of a conservative course of treatment is "sufficient to discount a claimant's testimony regarding [the] severity of an impairment." *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007). This includes a claimant's "unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment[.]" *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008).

Plaintiff contends that his regular medication management and mental health counseling was not conservative citing *Shelley C. v. Commissioner of Social Security*, 61 F.4th 341, 363-34 (4th Cir. 2023). The Fourth Circuit in *Shelley* held "that in cases where claimants consume antidepressant, anticonvulsant, and/or antipsychotic drugs, consistently attend visits with mental health professionals, and endure constant medication adjustment and management, their treatment is

classified as anything but 'routine and conservative.'" *Id.* The records indicate Plaintiff was not consistently attending counseling nor was he enduring constant medication adjustment and management. Plaintiff took Effexor to treat his depression, Seroquel for insomnia, and Gabapentin for restlessness. *See* Tr. 379, 415. While his medications for insomnia and restlessness were periodically adjusted, it appears his antidepressant medication remained consistent. Tr. 518, 530, 547, 333, 340. Plaintiff does not cite to any records demonstrating otherwise. The Court finds the ALJ's reasoning that Plaintiff had a routine and conservative course of treatment was supported by substantial evidence.

Next, the ALJ discounted Plaintiff's symptom testimony on the basis that he collected unemployment benefits for several months in 2023. Tr. 24. Plaintiff argues that he testified only looking for work out of financial necessity and there is no indication if he sought sedentary or light occupations that may correspond with a disability finding. ECF No. 11 at 14. An ALJ may not use evidence of an unsuccessful work attempt to discredit a claimant's credibility, particularly where the attempt was made out of financial necessity. *See Lingenfelter v. Astrue*, 504 F.3d 1028, 1038 (9th Cir. 2007). However, "[c]ontinued receipt of unemployment benefits does cast doubt on a claim of disability, as it shows that an applicant holds himself out as capable of working." *Ghanim v. Colvin*, 763 F.3d 1154, 1165 (9th Cir. 2014). Here, there is no evidence that Plaintiff attempted to work but failed

due to his impairments. Plaintiff testified that he had several live interviews but did not specify what became of them; although Plaintiff did note that he failed to return one call due to issues with his phone and it being near the time he was incarcerated. Tr. 54. As to the type of work Plaintiff sought, Plaintiff testified that he was applying for hotel maintenance jobs, the same kind of work he had done previously prior to the alleged onset date of his disability. Tr. 54. The ALJ's decision noted that Plaintiff's past relevant work as a maintenance repairer and maintenance supervisor were listed as positions of either a medium exertional level or light exertional level but medium exertional level as actually performed. Tr. 26. Thus, the evidence does not indicate Plaintiff sought only sedentary or light occupations.

Plaintiff further contends that the ALJ failed to address whether Plaintiff sought work that would accommodate his limitations—such as excessive absenteeism. ECF No. 11 at 14. This argument is also unpersuasive. An ALJ may properly consider a claimant's ongoing receipt of unemployment benefits as undermining their claims of disability where they hold themselves out as available for full-time work. *Carmickle*, 533 F.3d at 1161-62. Plaintiff testified that he was applying for full-time work and made no indication that he only sought work that could accommodate his limitations, rather he pursued the same type of work he had prior to the alleged onset date. Tr. 54. The ALJ's failure to explicitly consider

whether Plaintiff sought work that could accommodate him was therefore not unreasonable.

Plaintiff finally argues that the fact that he at times felt able to work, but not at other times, demonstrates his fluctuating insight and the waxing and waning of symptoms which cannot be held against him. ECF No. at 14-15. Plaintiff points to the fact that he never actually advanced passed the interview stage of the hiring process. *Id.* Plaintiff's argument is again unpersuasive. Plaintiff testified that after he lost his job in May 2022, he was eligible for unemployment in May or June 2022 but did not start receiving unemployment benefits until the end of 2022 or early 2023 due to a paperwork mix up. Tr. 47, 53. He also testified that he only stopped receiving benefits in May 2023 because he was incarcerated. Tr. 53. He testified that he collected as long as he was eligible and "left a lot on the table" due to his incarceration and stated that he could have probably kept claiming until 2024. Tr. 53-54. This testimony does not support Plaintiff's contention that he only looked for employment during the waning of his symptoms. Moreover, as previously mentioned, while Plaintiff noted that he had several live interviews, he did not specify why they did not go beyond the interview stage nor did he imply it was due to his impairments. Tr. 54-55. He did explain that he believed he had a call back from one place but never reached back out to them because he had issues with his phone and it was near the time he was incarcerated. Tr. 54. For these

reasons, the Court concludes the ALJ did not err in discounting Plaintiff's testimony in part on the basis he received unemployment benefits during the alleged disability period.

The ALJ lastly concluded that Plaintiff's activities of daily living undermined the alleged severity of his impairments and symptoms. Tr. 24. Specifically, the ALJ relied on Plaintiff's testimony that he has benefited from the regimen of prison life and can work six and a half hours per day making textiles at a sewing machine. Tr. 24, 50. The ALJ concluded that "even with only minimal treatment [Plaintiff] is able to work a prison job and has no attendance problems." Tr. 24. Plaintiff argues that equating Plaintiff's prison work performance to a competitive work environment was error given the highly structured and regulated nature of prison life. ECF No. 11 at 16. An ALJ "must make specific findings relating to the daily activities and their transferability to conclude that a claimant's daily activities warrant an adverse credibility determination." *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (citation and alteration omitted). The Court agrees that the ALJ's reliance on Plaintiff's work activities in a structured prison setting in discounting his symptom testimony was not substantially supported. *See Arnett v. Shalala*, No. 93-15972, 1995 WL 11119, at *4 (9th Cir. January 10, 1995) ("The ability to work only in highly structured environments, such as sheltered workshops, does not establish the capacity to engage in

substantial gainful activity.”). However, any such error was harmless as the ALJ provided other reasoning in discounting Plaintiff’s symptom testimony that the Court finds were clear and convincing and supported by substantial evidence.

**C. Lay Witness Testimony**

Plaintiff contends that the ALJ inadequately addressed the lay witness testimony of Plaintiff’s brother, Patrick Brown. ECF 11 at 17-18. Mr. Brown submitted a third-party function report on October 22, 2022, reporting that Plaintiff had trouble with stress, anxiety, and depression, which limited his ability to focus. Tr. 273. Mr. Brown additionally reported, among other things, that Plaintiff had difficulty sleeping, could not focus on basic repairs, had difficulty getting along with others as he was quick to anger or become frustrated with people, and had difficulty in memory, concentration, and completing simple tasks. Tr. 274-278. In addressing Mr. Brown’s report, the ALJ found it largely mirrored Plaintiff’s allegations concerning his impairments and ultimately found it unpersuasive “for substantially the same reasons I find the claimant’s symptom allegations inconsistent with the evidence.” Tr. 26.

The parties disagree on the level of discussion an ALJ must give lay witness testimony. ECF Nos. 11 at 18, 13 at 9-11. Ninth Circuit precedent has traditionally “required ALJs to give germane reasons for discounting the testimony of lay witnesses.” *Hudnall v. Dudek*, No. 23-3727, 2025 WL 1379101, at *4 (9th

Cir. May 13, 2025). In 2017, the Social Security Administration promulgated new regulations—applying to claims filed on or after March 27, 2017—that no longer require an ALJ to articulate how a nonmedical source was considered. 20 C.F.R. § 416.920c(d). However, the Ninth Circuit has yet to decide whether the new regulations are "clearly irreconcilable" with the germane reasons precedent. *Hudnall*, 2025 WL 1379101, at *2. Regardless, the Court need not decide the issue here as the ALJ provided germane reasons in discounting Mr. Brown's testimony. "Where the ALJ gives clear and convincing reasons to reject a claimant's testimony, and where a lay witness' testimony is similar to the claimant's subjective complaints, the reasons given to reject the claimant's testimony are also germane reasons to reject the lay witness testimony." *Caleb H. v. Saul*, No. 4:20-CV-5006-EFS, 2020 WL 7680556, at *8 (E.D. Wash. Nov. 18, 2020).

Mr. Brown's testimony repeats similar claims made by Plaintiff regarding the severity of his impairments and symptoms. Tr. 273-280. The ALJ provided clear and convincing reasons in discounting Plaintiff's testimony, therefore, those reasons also constitute germane reasons in discounting Mr. Brown's testimony.

**D. Step Five**

Plaintiff argues the ALJ failed to meet his burden at step five. ECF No. 11 at 18-20. Plaintiff first argues that the ALJ's finding that Plaintiff is limited to

occasional, superficial interactions with supervisors is disabling pursuant to case law and vocational expert testimony. ECF No. 11 at 18-19. Plaintiff asserts that the limitation prevents an individual from learning or progressing past the work training period of any job, thereby precluding competitive employment. ECF No. 11 at 18-19. However, the ALJ included the limitation in the hypothetical presented to the vocational expert who concluded there were jobs Plaintiff could still perform without mention of a training-period caveat. *See Leitz v. Kijakazi*, No. 22-35356, 2023 WL 4342114, at * 3 (9th Cir. July 5, 2023) ("[T]he vocational expert clearly testified that Leitz would not have the RFC to perform the any of the available jobs unless her RFC included the training-period caveat.").

Plaintiff next argues that the ALJ improperly relied on the vocational expert's testimony because it was in response to an incomplete hypothetical that did not account for well-supported limitations. ECF No. 11 at 19-20. As the ALJ's previous findings were supported by substantial evidence, the Court finds the ALJ did not err in relying on the vocational expert's testimony based on the presented hypothetical.

//

//

//

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1. Defendant's Motion for Summary Judgment (ECF No. 13) is **GRANTED**.
2. Plaintiff's Motion for Summary Judgment (ECF No. 11) is **DENIED**.

The District Court Executive is directed to enter this Order, enter judgment for the Commissioner, furnish copies to counsel, and **CLOSE** the file.

DATED August 25, 2026.

THOMAS O. RICE
United States District Judge